UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WABII BRANDING, INC., a Canadian corporation,<br><br>                      Plaintiff,<br>v.<br><br>OFF-BEAT RECORDS, INC., a Massachusetts corporation, and BARRY G. CLARK, an individual,<br><br>                      Defendants. | Civil Action No. |

## **COMPLAINT**

1. This action is brought by Plaintiff Wabii Branding, Inc. against Defendants Off-Beat Records, Inc. and Barry G. Clark.

## **PARTIES**

2. Plaintiff Wabii Branding, Inc. ("Plaintiff" or "Wabii") is a Canadian corporation with a principal place of business at 100 University Ave., 5th Floor, Toronto, Ontario, Canada M5J 1V6. Plaintiff is distributor of personal protective equipment and other medical supplies and testing kits.

3. Defendant Off-Beat Records, Inc. ("Off-Beat") is a Massachusetts corporation with a principal place of business at 169 Cooley Drive, Longmeadow, Massachusetts 01106. The registered agent for Off-Beat Records, Inc. is Barry G. Clark and the registered agent address is 169 Cooley Drive, Longmeadow, Massachusetts 01106.

1

COMPLAINT

4. Defendant Barry G. Clark ("Clark") is an individual adult resident of Longmeadow, Massachusetts, who on information and belief resides at 169 Cooley Drive, Longmeadow, Massachusetts 01106.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over these claims because of diversity between the parties pursuant to 28 U.S.C. § 1332(a). The Plaintiff and Defendants have complete diversity of citizenship at the time of filing and the dispute far exceeds $75,000 in controversy, exclusive of interest, punitive damages, attorney fees, or other litigation costs.

6. Venue is proper in this district under 38 U.S.C. § 1391(b)(1). Both Defendants reside in Longmeadow, Massachusetts.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff Wabii Branding, Inc. is a distributor of personal protective equipment (PPE) and other health care supplies.

8. On January 3, 2022, a representative of Wabii e-mailed Clark and Off-Beat inquiring about whether they had any COVID-19 Antigen Rapid Test kits (attached herein as Exhibit A is a true and correct copy of the e-mail thread between Plaintiff and Defendants). *See* Ex. A, pg. 3. The same day, Clark responded: "I have Ihealth 2 pk [. . .] in stock , ships this week - 1st in 1st out." *Id*. In response, Wabii specifically asked, "Do you actually own the iHealth or are you buying from them and shipping from their facility[,]" to which Defendants replied "OWN". *Id*. at 2. Defendants further stated that "the goods we have we purchased prior to any state orders places [*sic*] are currently in stock[.]" *Id*. at 3.

**2**

**COMPLAINT**

9. Given the time-sensitive nature of when Wabii needed the tests, and the representations of Defendants about ownership and possession of subject matter, it decided to place an order with and purchase the tests from Defendants.

10. Based on Mr. Clark's representations, on January 4, 2022, Wabii placed an order for 30,240 iHealth COVID-19 Antigen Rapid Test kits ("iHealth Tests") and, as requested, wired $215,460.00 to Defendant Off-Beat Records, Inc. for the order. The iHealth Tests were to be shipped on the same day, January 4, 2022, to 7615 Othello Ave., Suite H-1, San Diego, California 92111.

11. On January 4, 2022, after the order was placed, Mr. Clark sent an e-mail informing Plaintiff that the iHealth Tests were ready to be picked up on January 5, 2022 at 2:00 pm pt at 5353 W Imperial Hwy, Suite 506, Los Angeles, California 90045 (attached herein as Exhibit B is a true and correct copy of an e-mail correspondence between Defendants and Plaintiff). *See* Ex. B. In view of this information, Plaintiff scheduled for a truck to pickup the iHealth Tests at the time and location Mr. Clark provided. However, when the truck was en route to pick up the iHealth Tests, Mr. Clark informed Plaintiff that the iHealth Tests were actually available for pickup at a different address in Sunnyvale, California. Accordingly, Plaintiff cancelled the first truck it scheduled to pick up the iHealth Tests at 5353 W Imperial Hwy, Suite 506, Los Angeles, California 90045 and then scheduled a second truck to pick up the iHealth Tests in Sunnyvale, California. When the second truck showed up at the Sunnyvale, California address, the truck driver was informed by someone at the address that there was nothing there for him to pick up.

12. Defendants never shipped the tests, never had any iHealth Tests available for pickup at any of the addresses they provided, and never returned Wabii's money.

13. When Wabii realized the iHealth Tests were never shipped, it requested, on multiple occasions, a refund or a shipment of tests. However, Defendants refused to return Wabii's money or ship any tests to Wabii. It became apparent to Wabii that the Defendants had operated a scam in order to deprive it of the wired funds.

14. Even more alarming, and indicative of the fraudulent maneuverings, Defendants have been representing to others, even as recently as February 1, 2022, that they have possession and ownership of 10,000 COVID tests available in their warehouse. Either Defendants are lying to Plaintiff and refusing to right a wrong, or Defendants are lying to potential customers and defrauding them in the same way they defrauded Plaintiff.

15. Plaintiff wanted to believe that Defendants were not engaging in fraud and gave Defendants plenty of opportunity and time to return its funds or provide tests, but as time passed and Defendants never returned Plaintiff's funds or provided it with tests, it became apparent that Defendants set out to defraud Plaintiff all along.

16. Before Off-Beat failed to deliver the purchased tests, there was never any indication that it would be unable to supply the tests.

17. To the contrary, Off-Beat touted its strong track record of providing COVID tests.

18. As a distributor of personal protective equipment and other medical supplies and testing kits, Wabii has deep experience purchasing testing kits like those it sought to buy from Defendants. Based on Wabii's experience, there was nothing out of the ordinary in Defendants' communications about the testing kits, the price, or how the business appeared to Wabii, until the moment when Defendants failed to deliver the testing kits.

19. Off-Beat is now and at all relevant times has been the **alter ego** of Clark. Clark is the only owner of Off-Beat and exerts active and pervasive control over Off-Beat by carrying out

all of its business and communications. Clark is the only officer and/or representative of Off-Beat and actively participated in the material misrepresentations at issue here.

20. Clark has exclusive control over all of Off-Beat's decisions.

21. No one other than Clark speaks on behalf of Off-Beat.

22. Off-Beat is undercapitalized, since it cannot refund money it received for an order that it never fulfilled. Accordingly, Off-Beat also seems to be insolvent at the time of the transaction with Plaintiff.

23. On information and belief, Clark formed Off-Beat to seek to insulate himself from liability.

24. Clark also used the corporation in promoting and committing fraud against Plaintiff. Off-Beat is so indistinct from the individual that the corporate veil should be pierced to avoid allowing its controller, Clark, to escape liability and defraud Plaintiff via a corporate sham.

25. The separate corporate existence from its officer should be disregarded for the defeat of fraud or wrong and the remedying of injustice.

## COUNT 1

### (Fraud)

26. Wabii re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 16 above.

27. Defendants Off-Beat and Barry G. Clark intentionally misrepresented facts and misled Wabii in an effort to induce Wabii to place an order for iHealth Tests and wire Defendants $215,460.00.

28. On January 3, 2022, in response to Plaintiff's question of whether it owned the iHealth tests or not, Defendants stated "OWN" and reiterated that the iHealth Tests were

"purchased prior to any state orders" and "currently in stock[.]"  Ex. A, pg. 2-3. Misrepresentations such as these were made in writing and verbally.

29. The undisclosed truth, however, was that Defendants did not own the tests and did not have them currently in stock.

30. In reliance upon Defendants' misrepresentations, Wabii placed an order to purchase the iHealth Tests from Defendants because Defendants claimed to have the iHealth Tests ready to ship to Wabii.

31. Defendants knew that Wabii was seeking tests that were in Defendants' possession and ready to ship. Plaintiff and Defendants exchanged numerous correspondence regarding whether any COVID-19 test kits were available and when they would be ready to ship. *See* Ex. A, pg. 3. Defendants stated that they have iHealth Tests "in stock" that are ready to ship. *Id*. Wabii then specifically asked "Do you actually own the iHealth or are you buying from them and shipping from their facility[?]" *Id*. at 2. Defendants answered, "OWN[.]" *Id*.

32. Wabbi's relieance on the material misrepresentations of Defendants was reasonable.

33. Based on Defendants' material misrepresentation, Wabii wired $215,460.00 to Off-Beat for an order of 30,240 iHealth Tests.

34. Defendants never shipped the iHealth Tests to Wabii, never had the iHealth Tests available for pickup at the addresses Defendants specified, and never returned Wabii's money. Clearly, Defendants did not "own" any iHealth Tests or have any iHealth Tests ready to ship or "currently in stock" when they misrepresented those facts to Wabii.

COMPLAINT

35. Defendants knew they did not own, possess, or have tests ready to ship when they made those statements to Wabii with the intent to induce Wabii to rely on that information and place an order.

36. As a result of Defendants' false statements, Wabii was damaged and continues to suffer damages. Wabii has also suffered damages for having to satisfy orders it accepted and processed at costs much higher than it paid Defendants. Wabii has also suffered damages to its reputation with clients.

37. Wabii has been damaged in an amount of at least $215,460.00. It seeks this in actual damages, in addition to any amount that will fairly and adequately compensate it at trial.

38. Further, Wabii has experienced consequential damages in the form of lost sales in the future, and damage to its business relationships who depended on Wabii for consistent supply of medical products. Defendants knew of the time-sensitive nature of its products, but instead of selling actual much-needed products, it unlawfully and unethically exploited the urgency of the situation to quickly extract $215,460.00—for goods it never owned or possessed. The lost sales and consequential damages were far in excess of the base damages of $215,460.00.

39. Because of the intentional and malicious intent to defraud the Defendants, Wabii is entitled to punitive damages in the highest amounts that the law will support, and that a trier of fact will find sufficient to punish Defendants for egregious behavior. Punitive damages should be a awarded in the amount of no less than $2,000,000.00, in addition to the actual base damages, so as to deter future egregious fraudulent conduct. In addition, all of the Plaintiff's attorney fees and costs should be awarded to Plaintiff.

## COUNT II

### (Fraud in the Inducement)

40. Wabii re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 30 above.

41. Defendants Off-Beat and Barry G. Clark intentionally misrepresented facts and misled Wabii in an effort to induce Wabii to place an order for iHealth Tests and wire Defendants $215,460.00.

42. On January 3, 2022, in response to Plaintiff's question of whether it owned the iHealth tests or not, Defendants stated "OWN" and that the iHealth Tests and that they were "purchased prior to any state orders" and "currently in stock[.]" Ex. A, pg. 2-3.

43. The undisclosed truth, however, was that Defendants did not own the tests and did not have them currently in stock.

44. In reliance upon Defendants' misrepresentations, Wabii placed an order to purchase the iHealth Tests from Defendants because Defendants claimed to have the iHealth Tests ready to ship to Wabii. Defendants knew that Wabii was seeking tests that were in Defendants' possession and ready to ship.

45. Based on Defendants' material misrepresentation, Wabii wired $215,460.00 to Off-Beat for an order of 30,240 iHealth Tests. Wabii reasonably and justifiably relied to its detriment on these misrepresentations and was damaged by the conduct of Defendants. The reliance was reasonable in light of prior course of dealing, and because the urgency of getting personal protective equipment and other health supplies was such that the parties operated quickly in the past and had established some measure of prior trust. This trust was abused.

**COMPLAINT**

46. Defendants never shipped the iHealth Tests to Wabii, never had the iHealth Tests available for pickup at the addresses Defendants specified, and never returned Wabii's money. Defendants did not "own" any iHealth Tests or have any iHealth Tests ready to ship or "currently in stock" when they misrepresented those facts to Wabii. These statements were lies.

47. Defendants knew they did not own, possess, or have tests ready to ship when they made those statements to Wabii with the intent to induce Wabii to rely on that information and place an order.

48. As a result of Defendants' false statements, Wabii was damaged and continues to suffer damages. Wabii has also suffered damages for having to satisfy orders it accepted and processed at costs much higher than it paid Defendants. Wabii has also suffered damages to its reputation with clients.

49. Therefore, Wabii has been damaged in an amount of at least $215,460.00 of actual damages, and it seeks this amount and all other amounts that will fairly and adequately compensate it for their damages and others such relief that will be proven at trial.

50. Wabii seeks consequential damages, and punitive damages as set forth in prior paragraphs of this complaint for the egregious activities and conduct of Defendants. Punitive damages should be a awarded in the amount of no less than $2,000,000.00, in addition to the actual base damages, so as to deter future egregious fraudulent conduct. In addition, all of the Plaintiff's attorney fees and costs should be awarded to Plaintiff.

## COUNT III

### (Money Had and Received)

51. Wabii re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 41 above.

**COMPLAINT**

52. Wabii paid Defendants $215,460.00 in consideration of receiving 30,240 iHealth Tests.

53. Defendants never shipped any iHealth Tests to Wabii and never returned any money to Wabii, despite demands for return of the money.

54. In the interests of justice, Defendants should not be able to retain the money they received from Wabii, instead, the money they received from Wabii should be returned to Wabii.

55. Wabii has been damaged in an amount of at least $215,460.00, in addition to and amount that will fairly and adequately compensate it for their damages and others such relief that will be proven at trial. Wabii seeks consequential and punitive damages to the extent they are supported by law. Punitive damages should be a awarded in the amount of no less than $2,000,000.00, in addition to the actual base damages, so as to deter future egregious fraudulent conduct. In addition, all of the Plaintiff's attorney fees and costs should be awarded to Plaintiff.

## COUNT IV

### (Violation of G.L. Chapter 93A, Section 11)

56. Wabii re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 46 above.

57. Defendants represented to Wabii that they had COVID testing kits, iHealth Tests, available for sale and were prepared to sell those testing kits.

58. Defendants agreed to sell to Wabii iHealth Tests.

59. Wabii provided $215,460.00 to Defendant in exchange for iHealth Tests.

60. Defendants have retained the $215,460.00 and used it for their benefit. Due to non-delivery of the iHealth Tests, Plaintiff has requested a refund on numerous occasions. Defendants have not returned one dollar of the amount they received from Wabii.

61. The Defendants' acts and omissions as set forth above constitute unfair and/or deceptive act or practices violative of M.G.L. c. 93A, §§ 2 and 11.

62. The Defendants' actions were undertaken in trade or commerce and occurred primarily and substantially in Massachusetts.

63. The Defendants' unfair and/or deceptive acts and practices constitute knowing, willful, and bad faith violations of M.G.L. c. 93A §§ 2 and 11.

64. As a result of the acts and practices described above, each of which was committed knowingly and willfully, Plaintiff has sustained damages and will continue to sustain damages, including treble damages, costs, and attorneys' fees, which are all sought.

## COUNT V

**(Unjust Enrichment)**

65. Wabii re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 53 above.

66. Wabii provided $215,460.00 to Defendant in exchange for iHealth Tests.

67. Against the fundamental principles of justice or equity and good conscience, Defendants never shipped any iHealth Tests to Wabii and have retained the Wabii's $215,460.00.

68. Wabii has been damaged in an amount of at least $215,460.00, in addition to and amount that will fairly and adequately compensate it for their damages and others such relief that will be proven at trial.

69. Wabii seeks consequential and punitive damages to the extent they are supported by law. Punitive damages should be a awarded in the amount of no less than $2,000,000.00, in

addition to the actual base damages, so as to deter future egregious fraudulent conduct. In addition, all of the Plaintiff's attorney fees and costs should be awarded to Plaintiff.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request this Court to:

a. Enter judgment against Defendants;

b. An award of damages of at least $1,000,000.00 to be paid by Defendants adequate to compensate Plaintiff for Defendants' conduct;

c. For general damages;

d. For consequential damages;

e. For treble damages, costs, and attorneys' fees pursuant to M.G.L. c. 93A §11;

f. For punitive damages, which should be awarded in the amount of no less than $2,000,000.00, in addition to the actual base damages, so as to deter future egregious fraudulent conduct;

g. Award costs and reasonable attorneys' fees incurred in bringing this suit;

h. A permanent injunction against Defendants' predatory medical sales and fraudulent activities; and,

i. Grant such other relief that the Court deem just and proper.

Date: <u>February 15, 2022</u>                Respectfully submitted,

TODD & WELD LLP

/s/ Benjamin J. Wish
Benjamin J. Wish (BBO # 672743)
Todd & Weld LLP
One Federal Street, 27th Floor

12

**COMPLAINT**

Boston, MA 02110
Tel: (617) 720-2626
E-mail: bwish@toddweld.com

/s/ *Byron Ma*
Byron Ma (*Pro Hac Vice* Forthcoming)
John K. Buche (*Pro Hac Vice* Forthcoming)
BUCHE & ASSOCIATES, P.C.
875 Prospect St., Suite 305
La Jolla, California 92037
Tel.: (858) 459-9111
Fax: (858) 430-2426
bma@buchelaw.com
jbuche@buchelaw.com

*ATTORNEYS FOR PLAINTIFF*

**COMPLAINT**